Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,069-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

WILLIAM BOYD MATLOCK                    Plaintiff-Appellant

versus

BROOKSHIRE GROCERY                      Defendant-Appellee
COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018-2183

Honorable Wilson Rambo, Judge

* * * * *

ANTHONY J. BRUSCATO                     Counsel for Appellant


HUDSON, POTTS & BERNSTEIN               Counsel for Appellee
By: Donald H. Zeigler, III



* * * * *



Before PITMAN, GARRETT, and STEPHENS, JJ.

**STEPHENS, J.**

William Boyd Matlock appeals a judgment of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, granting a motion for summary judgment by Brookshire Grocery Company and dismissing Matlock's claim with prejudice. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of injuries plaintiff, William Boyd Matlock, sustained on September 3, 2016, when he slipped and fell in the produce section of a Super 1 grocery store (the "store"), operated by defendant, Brookshire Grocery Company ("Brookshire"), in Monroe, Louisiana. Matlock was taken from the store by ambulance to St. Francis Medical Center for neck, shoulder, and knee pain, and numbness in the tips of his fingers and toes. He subsequently received additional treatment at Louisiana Pain Care and North Louisiana Orthopedic and Sports Medicine Clinic. On November 10, 2016, Matlock filed a petition for damages against Brookshire.[1] Following discovery and the taking of depositions, Brookshire filed a motion for summary judgment on December 19, 2018.

Brookshire argued in its memorandum in support of the motion that Matlock would not be able to prove an essential element of its claim against Brookshire—that Brookshire either created a condition that presented an unreasonable risk of harm or had actual or constructive notice of such a condition prior to the incident. Brookshire submitted an incident report

---

[1] Matlock's petition was originally filed in Monroe City Court but was subsequently transferred to the Fourth Judicial District Court after his medical expenses exceeded $24,000.

completed by the store's assistant manager, Chris Baker. The report states Matlock fell near the watermelon bins, where a "milky/clear" puddle of watermelon juice was standing on the floor, roughly 18 inches in diameter. The report further indicated there were two "wet floor signs" placed in the area at the time of Matlock's fall. Attached to the report were photographs of the puddle taken immediately after the incident.

Brookshire also submitted affidavits of four store employees, including Baker, and the produce manager, Stewart Bodie. All four employees testified they were on duty when Matlock fell but did not witness the incident, place any liquid substance on the floor that caused Matlock to slip, or have any knowledge of the substance's existence on the floor prior to the incident. Baker further testified he had visited other grocery stores in the Monroe area and photographed their watermelon displays. Those photographs were attached to Baker's affidavit along with a photograph of the watermelon display that was in place in the store when the incident occurred.[2] Additionally, store employees Derrick Morrison and Patrick Reeves testified they were in the area 2 and 22 minutes, respectively, prior to Matlock's fall, at which times there was no watermelon juice or other liquid substance on the floor where Matlock would later fall.

In further support of its motion, Brookshire submitted the deposition of Matlock, wherein he testified that prior to his fall, he did not see the puddle on the floor or any buggy marks or tracks or footprints through the liquid. Matlock stated the liquid probably covered "about a two- or three-

---

[2] The photographs purportedly taken by Baker at other Monroe area grocery stores were subsequently excluded from evidence following a motion to strike filed by Matlock; however, they were proffered by Brookshire and are included in the record on appeal.

foot little area." He further testified that other than having overheard an employee state the liquid appeared to be watermelon juice, he did not know where it came from. Matlock testified, "[the liquid] seemed like it must not have been there too long ahead . . . and if it'd been there very long, I probably would've seen it." He stated while "wet floor" cones appear "everywhere in the store," there was not one at the spot of his fall; however, after falling, while still lying on the floor, he noticed a cone he had not seen before, which was located two or three feet away.

In opposition to Brookshire's motion, Matlock argued there existed genuine issues of material fact regarding whether Brookshire knew of the risk of leaking watermelons and failed to prevent it by inspecting the watermelons or placing an absorbent material beneath the bins and regarding how long the watermelon juice was on the floor before Matlock slipped in it. In support of his position, Matlock submitted photographs from the scene, the same ones attached to the incident report, and the surveillance video from the store showing the area in which the accident occurred. The video includes footage from the produce section of the store and shows the watermelons were displayed in a large cardboard bin that was placed on wooden pallets. While the view of Matlock's actual fall is obstructed by produce containers, the footage shows the following notable activity:

2:22 p.m.     A female shopper traverses back and forth over the incident site several times.

2:25 p.m.     A male shopper traverses the incident site.

2:28 p.m.     Another female shopper traverses the incident site.

2:28 p.m.     A store employee enters the area.

2:36 p.m.     Another female shopper traverses the incident site.

| | |
|---|---|
| 2:44 p.m. | A small female child traverses the incident site and back over again. |
| 2:48 p.m. | A store employee enters the area. |
| 2:50 p.m. | Matlock slips and falls. |

Additionally, in further support of his argument, Matlock relied on Baker's deposition, which is referenced throughout his memorandum in opposition as "P3: Baker Depo." A review of the record shows that during the hearing on the motion, Baker's deposition was extensively referenced and discussed by Matlock and Brookshire, who both evidently believed that the deposition had been properly attached to Matlock's opposition and made a part of the trial court record. However, it was subsequently discovered Baker's deposition was not contained in either the trial court or appellate records. Matlock filed a motion to supplement the record, which was ultimately granted by the trial court. Accordingly, the record on appeal was supplemented on October 2, 2019, with Baker's deposition.[3]

In his deposition, Baker noted the store displayed its watermelons in large cardboard bins that were set atop wooden pallets on the floor of the produce section. Most of the shipments of watermelons came from either

---

[3] On October 8, 2019, Brookshire, having opposed Matlock's motion to supplement the record, filed an answer to appeal asserting that while the trial court was correct in granting its motion for summary judgment, it erred both in considering Baker's deposition and in supplementing the record with it. An appellee who seeks to have a judgment "modified, revised, or reversed in part" or to be awarded damages against the appellant must file an answer to the appeal and set out the relief sought "not later than fifteen days after the return day or the lodging of the record whichever is later." La. C.C.P. art. 2133(A). Here, the return date was May 18, 2019, and the two-volume record was lodged in this court on May 30, 2019. Therefore, answer to appeal by Brookshire had to be filed no later than 15 days after May 30, 2019. However, Brookshire asserts the 15-day period to file an answer should commence on the date the record was supplemented, rather than lodged—October 2, 2019. Supplementations to the appellate record are common and do not affect the date of lodging; otherwise, the time for answering would virtually be open-ended. Accordingly, Brookshire's answer filed on October 8, 2019, was untimely and need not be considered. Moreover, considering the final determination, the answer is moot.

local vendors or from Brookshire's warehouse in Tyler, Texas. Baker believed the watermelons were delivered to the warehouse by the vendors in the same cardboard bin that the store would later receive and place on display in the produce section. He testified he was unsure whether the watermelons, once received from the vendor, were unloaded, inspected, and then returned to the bins, but he assumed they were not. Upon delivery to the store, the watermelon bins were placed in the back room. Baker explained that how long the bins would stay in the back room before being moved to the floor of the produce section depended on how large a shipment was received and how quickly the watermelons on display were being sold. Baker confirmed the problem of a leaking watermelon developed on occasion and testified there was no way to determine whether a weak or leaky watermelon was located in the bin other than the appearance of liquid on the floor or the presence of gnats, which he explained were attracted to any kind of bad fruit or vegetable. He stated when the watermelons did leak, "sometimes it's a slow leak, and sometimes it's not."

Baker confirmed he was at the scene following Matlock's fall, completed the incident report, and took the photographs that were attached to the report. Baker stated he had reviewed the surveillance footage and testified the video shows that following the incident, store employees dug through the bin and found the leaky watermelon and took it to the back room. He stated the leaky watermelon could be seen in the video and testified it looked like a deflated football.

Baker further testified there are always yellow warning cones present in the produce section regardless of whether the floor is actually wet in order to encourage people to be careful because the produce section has a higher

5

risk than other areas of the store of something being on the floor. Likewise, Baker stated the store has employees monitoring the floor of the produce section all day long. He stated they are always on the lookout for leakage on the floor from watermelons or any other source.

Following a hearing on Brookshire's motion for summary judgment, the trial court took the matter under advisement in order to review the surveillance video. Subsequently, without assigning reasons, the trial court rendered judgment in favor of Brookshire, granting its motion for summary judgment and dismissing Matlock's claim with prejudice. This appeal by Matlock ensued.

## DISCUSSION

On appeal, Matlock asserts in his sole assignment of error that the trial court erred in granting summary judgment in favor of Brookshire. He claims the trial court erred for either or both of two reasons: (1) he proved the actions of store employees resulted in the creation of the puddle, store employees knew there was a risk of a puddle, and store employees took no steps to eliminate or reduce the risk; and, (2) he provided circumstantial evidence the puddle had taken an extended period of time to form, but store employees failed to notice and eliminate the puddle. We disagree.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13), 144 So. 3d 791; *Bank of Am., N.A. v. Green*, 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219. Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La. C.C.P. art. 966(A)(2). We

view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 2004-0806 (La. 6/25/04), 876 So. 2d 764. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Louisiana C.C.P. art. 966(D)(1) provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue is one about which reasonable persons could disagree. *Hines*, *supra*; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. *Hines, supra*; *Franklin, supra.* When considering a motion for summary judgment, it is improper to weigh the evidence or determine the truth of the matter; rather, the trial court is to determine only whether there is a genuine issue of fact for trial. *Franklin*, *supra.*

The imposition of tort liability on a merchant for a patron's injuries resulting from an accident is governed by La. R.S. 9:2800.6, which provides, in part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a

7

reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business[.]

Plaintiffs who slip and fall in merchants' premises bear a heavy burden of proof. Failure by a plaintiff to prove any of the three required elements in La. R.S. 9:2800.6(B) is fatal to the plaintiff's case. *Gregory v. Brookshire Grocery Co.*, 45,070 (La. App. 2 Cir. 4/21/10), 35 So. 3d 458.

Matlock asserts there is a genuine issue of fact as to whether store employees negligently created an unreasonably hazardous condition and whether store employees had constructive notice of the existence of the specific puddle in which he slipped. First, relying exclusively on Baker's

8

deposition, Matlock argues Brookshire's procedures for purchasing, storing, inspecting, and displaying watermelons resulted in the potential for watermelon juice to leak onto the floor and created a hazardous condition for customers; therefore, Brookshire undeniably created the puddle in which Matlock slipped. Matlock asserts the evidence supports Brookshire had knowledge that leaking watermelon juice was a recurrent and chronic problem, yet Brookshire failed to inspect the watermelons prior to displaying them and periodically thereafter, and it also failed to place an absorbent material beneath the watermelon bin. He argues that accordingly, a reasonable fact finder could conclude the store created the hazardous condition by failing to eliminate or reduce the risk of watermelon juice leaking into the aisle.

This argument blurs the lines of the elements of proof required by La. R.S. 9:2800.6. Matlock's assertions regarding Brookshire's creation of the puddle actually address the reasonable care element of subsection B(3). Matlock's argument suggests a merchant's failure to exercise reasonable care is the equivalent of a merchant creating a dangerous condition. However, such an interpretation would nullify subsection B(3) of the statute.

A similar argument was rejected by the court in *Ross v. Schwegmann Giant Super Markets, Inc.,* 1998-1036 (La. App. 1 Cir. 5/14/99), 734 So. 2d 910, *writ denied*, 1999-1741 (La. 10/1/99), 748 So. 2d 444. There, the plaintiff slipped and fell after stepping on a small amount of crab salad on the floor from a nearby self-serving sampling station and argued the store failed to exercise reasonable care in creating the hazardous condition where it was known that customers who sampled the salad would spill or drop it on the floor. The evidence did not show how the salad came to be on the floor

9

or how long it had been there. In affirming summary judgment in favor of the store, the court noted there was no evidence the crab salad was on the floor due to an act by a store employee and there was nothing in the record that could establish the store had any notice of the salad on the floor; thus there was no issue of fact that the store had either created or had actual or constructive notice of the salad on the floor.

Here, like the plaintiff in *Ross v. Schwegmann*, *supra*, Matlock has simply failed to present any factual support for his speculation that Brookshire's employees or methods were responsible for creating the puddle of watermelon juice Matlock slipped in. Matlock offers no evidence remotely supporting the notion that but for Brookshire's procedure for purchasing, storing, inspecting, and displaying the watermelons, the puddle of watermelon juice on which he slipped would not have been created.

Second, Matlock argues the store employees had constructive notice of the existence of the specific puddle in which he slipped. While he concedes there is no direct evidence as to how long the puddle of watermelon juice took to form, Matlock claims the circumstantial evidence supports the conclusion the puddle formed gradually, not abruptly. Matlock asserts the fact finder could, therefore, properly infer the watermelon juice had been dripping for a substantial period of time prior to Matlock's injury, and the store employees, in the exercise of reasonable care, should have noticed the juice and eliminated the hazard before a puddle formed. In support of his argument, Matlock points to the condition of the watermelon itself, which Baker testified looked like a "deflated football." Matlock suggests that given the severely deteriorated condition of the watermelon, it is highly probable the watermelon deteriorated for hours or days. Matlock

10

also notes the size of the puddle was reported to be 18-36 inches in width and claims a puddle of that size takes considerable time to form.

In *White v. Wal-Mart Stores, Inc.*, 1997-0393 (La. 9/9/97), 699 So. 2d 1081, the Louisiana Supreme Court reversed the court of appeal and affirmed the district court's grant of summary judgment in favor of Wal-Mart. In doing so, the court considered the idea of constructive notice and determined:

> The definition is likewise clear and unambiguous. There is a temporal element included: "such a period of time . . . [.]" The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden.
>
> Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time . . . [.]" Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden. (Footnotes omitted.)

*Id.* at 1084-85.

Here, Matlock fails to present any evidence, but instead offers speculative argument that does not consist of any facts to create a positive showing that the condition existed for a period of time prior to his fall. While Matlock relied heavily on Baker's testimony in an attempt to validate his argument that Brookshire was responsible for creating the puddle of

11

watermelon juice, he ignores Baker's testimony that the employees assigned to the produce section of the store were vigilant about inspecting the floor for hazards, specifically leakage from the watermelon bins. Likewise, Matlock fails to acknowledge Baker's testimony that based on his experience, when watermelons leaked, "sometimes it's a slow leak, and sometimes it's not." Matlock presented no evidence establishing the particular puddle of watermelon juice causing his fall was formed slowly, over a period time, or existed for any period of time prior to his fall.

Furthermore, while there is no provision in La. R.S. 9:2800.6 which would require the shifting of the burden to the merchant to disprove its culpability, Brookshire presents evidence undermining Matlock's constructive notice claim. Photographs taken of the area following the accident do not show footprints or tire marks from shopping cart wheels. Store employees testified they had inspected the area shortly prior to the incident and found it to be free of watermelon juice. While these two employees did not traverse the actual incident site, it is evident from the surveillance footage that their path would have provided a clear view of the spot where Matlock would later fall. Brookshire further points to the surveillance footage showing a small child walking directly over the area where Matlock subsequently fell approximately 6½ minutes later and suggests the photographs of the scene showing no footprints through the watermelon juice prove the puddle was created after the child traversed the site. Additionally, Brookshire notes Matlock's own statements at the time of the accident indicating his belief the liquid had not been on the floor long and admitting he did not see any tracks or footprints through the liquid.

Like plaintiffs in *Ross* and *White*, Matlock has failed to produce any evidence store employees themselves created or had actual knowledge of the watermelon juice on the floor, and he has not produced any positive evidence regarding how long before his fall the liquid had been on the floor. Because Matlock would carry the burden at trial, to prevail on summary judgment Brookshire need only point to the absence of factual support for one essential element of Matlock's claim. Brookshire challenged Matlock's ability to prove it either created or had actual or constructive notice of the puddle of watermelon juice on the floor of the store prior to his fall, and in response, Matlock failed to produce factual support sufficient to establish the existence of a genuine issue of material regarding this essential element of his claim against Brookshire. Accordingly, this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment granting summary judgment in favor of Brookshire Grocery Company is affirmed. All costs of this appeal are assessed to William Boyd Matlock.

**AFFIRMED.**